IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) |  |
| OCEANA, INC. | ) |  |
| Plaintiff, | ) |  |
| v. | ) | Case No. 1:07CV00142 RBW |
|  | ) |  |
| GUTIERREZ, *et al.*, | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

**CASE MANAGEMENT REPORT PURSUANT TO LOCAL CIVIL RULE 16.3(d)**

**I.    OCEANA'S STATEMENT OF THE CASE AND STATUTORY BASIS FOR ALL CAUSES OF ACTION PURSUANT TO THE COURT'S MARCH 22, 2007, ORDER FOR INITIAL SCHEDULING CONFERENCE**

The dredges or trawl nets used to catch scallops also catch, harm, and often kill[1] loggerhead sea turtles, a threatened species under the Endangered Species Act ("ESA"), in waters off the Mid-Atlantic states.  Compl. ¶¶ 1 - 2.  In its December 2004 Biological Opinion, the agency[2] committed to increase observer coverage to develop a more accurate estimate of scallop trawl takes.  *Id.* ¶ 47.  In its most recent, September 18, 2006, Biological Opinion, the agency asserted that an improved estimate was "not yet available," and anticipated only five trawl takes.  *Id.* ¶ 49.  But in a contemporaneous document, the agency reported that all other Mid-Atlantic trawl fisheries caught twelve times more loggerhead sea turtles than had previously been estimated.  *Id.* ¶¶ 51 – 52.  After the Complaint was filed, the agency issued a report estimating scallop trawl takes at eighty-one to 191 loggerheads annually.  Northeast Fisheries Science Center Reference Document 07-04 at 11.  Oceana's first claim alleges that the agency

---

[1] These interactions are known as "takes."

[2] Oceana refers to the Federal Defendants either as "the agency" or "the Fisheries Service."

violated its Administrative Procedure Act ("APA") duty to issue a rational estimate of takes by failing to rationally estimate the number of scallop trawl takes in the September 2006 Biological Opinion. 5 U.S.C. § 706(2); Compl. ¶¶ 82 – 93.

A new rule requires fishermen to place chains over the mouths of scallop dredges so that loggerheads colliding with the gear are not captured in the dredge bag and can no longer be monitored by an observer on the vessel deck. Compl. ¶¶ 65, 73. The September 2006 Biological Opinion failed to require an alternative system to actually monitor takes. *Id.* ¶¶ 78-81. Oceana alleges that the agency violated the APA by (1) acting inconsistently with its Endangered Species Act regulations in failing to require actual monitoring of scallop dredge takes and (2) by failing to adequately consider one identified feasible alternative and failing to consider at all another identified and feasible alternative for monitoring. Compl. ¶¶ 94 – 104; 50 C.F.R. § 402.14(i)(3).

## II.    FEDERAL DEFENDANTS' STATEMENT OF CASE & STATUTORY BASIS FOR CAUSES OF ACTION

Plaintiff's case, based on the Administrative Procedure Act (APA) and Endangered Species Act (ESA), challenges a September 18, 2006 biological opinion related to the impacts of the Atlantic sea scallop fishery upon listed sea turtles. Federal Defendants, Carlos Gutierrez, Secretary of Commerce, the National Oceanic and Atmospheric Administration (NOAA), and the National Marine Fisheries Service (NMFS) reject Plaintiff's lengthy characterizations of this case, and dispute any suggestion that Federal Defendants improperly applied the best scientific information available, or that Plaintiff caused changes in Federal Defendants' decision-making.

On its face, Plaintiff's *Complaint* (Jan. 19, 2007) is limited to the 2006 BiOp. It does not challenge the rule governing the use of "chain mats" in the fishery to minimize impacts of the Atlantic sea scallop fishery on sea turtles, *see*, 71 Fed. Reg. 50361(Aug. 26, 2006), nor does it challenge the Fishery Management Plan (FMP) or any related rules issued pursuant to the

Magnuson-Stevens Fishery Conservation and Management Act.  *See*, New England Fishery

Management Council documents *available at* http://www.nefmc.org/scallops/index.html (visited

May 4, 2007); 47 Fed. Reg. 20776 (May 14, 1982)(original notice re: FMP and emergency rule).

## III.    OCEANA'S STATEMENT CONCERNING CASE MANAGEMENT

This case is a challenge to a final agency action: the September 2006 Biological Opinion.

The Court would ordinarily decide this case in the context of a summary judgment motion based

on its review of the administrative record; therefore, this case is exempted from initial disclosure

under Local Civil Rule 16.3(b).  Nevertheless, because Oceana anticipates filing a motion for

preliminary injunctive relief and because Oceana anticipates the need to file a motion to compel

the agency to complete the record in this case, it is appropriate to convene a case management

conference at the scheduled date and time to discuss these issues.  Furthermore, because Oceana

anticipates filing a preliminary injunction motion and a motion to complete the record, it is

premature to set a schedule for briefing a summary judgment motion.

### A.    Oceana Anticipates Filing a Preliminary Injunction Motion

Oceana anticipates the need to file a preliminary injunction, because (1) over the last few

years the Fisheries Service has evaded prompt resolution of disputes concerning sea turtle

management by issuing new agency actions when challenged by litigation; (2) the issuance of a

dramatically higher estimate of takes from scallop trawls establishes that Oceana is substantially

likely to prevail on is scallop trawl take estimate claim; and (3) Oceana can propose a narrowly

tailored remedy to abate the irreparable harm that continues to be inflicted on sea turtle

populations.

1.      **The Fisheries Service Has Evaded Prompt Resolution of Disputes Concerning Sea Turtle Management By Issuing New Agency Actions When Challenged by Litigation**

Over the past five years, under pressure from Oceana, the Fisheries Service has been forced to increase its efforts to monitor the impacts of scallop fishing on loggerhead sea turtles and has also been forced to dramatically revise upward their estimates of the number of loggerhead sea turtles taken by scallop fishing, but often only as a response to litigation and without requiring actions to mitigate the effects of these takes.

Thus, in 2000 the Fisheries Service did not anticipate that scallop fishing would catch more than one loggerhead annually, Memo for the Record, Patricia Kurkul, Effects of Scallop Fishery and Framework 14 on listed species, ESA Section 7 (December 2000), at 2; however, with increased monitoring of the fishery through at-sea biological observers, the agency revised its estimate upwards in February 2004 to ninety-eight loggerhead sea turtle takes by scallop dredge gear and four loggerhead sea turtle takes by scallop trawl gear. Fisheries Service, Endangered Species Act Section 7 Consultation on the Atlantic Sea Scallop Fishery Management Plan [Consultation No. F/NER/2003/01583] (February 23, 2004) (the "February 2004 Biological Opinion"), at 68. After Oceana filed suit over the February 2004 Biological Opinion, arguing, *inter alia*, that the agency's estimates were still too low, the agency issued a new Biological Opinion in December 2004 that concluded that scallop dredge gear would take 749 loggerhead sea turtles per year and that scallop trawl gear would take three loggerhead sea turtles per year. Fisheries Service, Endangered Species Act Section 7 Consultation on the Atlantic Sea Scallop Fishery Management Plan [Consultation No. F/NER/2004/01606] (December 15, 2004) (the "December 2004 Biological Opinion"), at 78. As discussed above, the December 2004 Biological Opinion also committed the agency to increase observer coverage on scallop trawls

and to develop a more accurate estimate of the number of loggerhead sea turtles taken by scallop trawl gear. *Id.* at 80 – 81.

As discussed above, in August 2006, the Fisheries Service issued a new rule purporting to confer a modest benefit on loggerhead sea turtles by screening off the mouth of scallop dredges so that, when the dredges collide with loggerhead sea turtles, the sea turtles do not suffer additional injury by being captured inside the dredge "bag." Compl. ¶¶ 7, 59-60. Prior to the new rule, the agency monitored the impacts of scallop dredging on sea turtles through at-sea observers on the deck of scallop vessels who observed and reported *only* the sea turtles captured in the dredge bag. *Cf. id.* ¶ 65. In adopting the new rule, which, by preventing the capture of loggerhead sea turtles within the dredge bag, prevented at-sea observers from monitoring the impacts of scallop fishing on loggerhead sea turtles, the agency should have adopted a new monitoring technique appropriate to the modified gear, but it did not. Therefore, in September 2006, Oceana filed suit, alleging, *inter alia*, that because the agency had not updated its monitoring methods, it was no longer actually monitoring scallop dredge takes, in violation of the December 2004 Biological Opinion. *Oceana v. Gutierrez*, Compl., D.D.C. No. 06-1638 (Sept. 22, 2006).

On September 18, 2006, the Fisheries Service issued yet another Biological Opinion for the scallop fishery, which contained new monitoring provisions that no longer required actual monitoring of takes from scallop dredges. Fisheries Service, Endangered Species Act Section 7 Consultation on the Atlantic Sea Scallop Fishery Management Plan [Consultation No. F/NER/2005/06066] (September 18, 2006) (the "September 2006 Biological Opinion"). Notwithstanding the commitment in the December 2004 Biological Opinion to improve the estimate of takes from scallop trawls, the September 2006 Biological Opinion asserted that the

improved estimate was "not yet available."  Compl. ¶ 49.  The new Biological Opinion continued to estimate that scallop dredges would take 749 loggerheads annually, and also anticipated that scallop trawls would take up to five loggerheads annually.  September 2006 Biological Opinion at 86.  The agency did not publicize the issuance of this new Biological Opinion and Oceana did not learn of its existence until November 17, 2006.  Compl. ¶¶ 74 – 76.  Shortly thereafter, Oceana dismissed its challenge to the August 2006 rule.  *Oceana v. Gutierrez*, Notice of Voluntary Dismissal Pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, D.D.C. No. 06-1638 (Dec. 14, 2006).

Meanwhile, the agency issued two reports concerning the number of loggerhead sea turtles caught by trawl gear in Mid-Atlantic waters.  The first report concluded that rather than the forty-nine annual takes previously estimated, all trawl gear *except* scallop trawl gear took 616 loggerheads annually. Compl. ¶¶ 51 – 52.  The second report, issued in February 2007, after Oceana filed this case, estimated that scallop trawl gear took eighty-one to 191 loggerheads annually.  Kimberly T. Murray, *Estimated Bycatch of Loggerhead Sea Turtles (Caretta caretta) in U.S. Mid-Atlantic Scallop Trawl Gear, 2004-2005, and in Scallop Dredge Gear, 2005*. Northeast Fisheries Science Center Reference Document 07-04 (February 2007), at 11.

After analyzing the September 2006 Biological Opinion, Oceana concluded that the Biological Opinion was unlawful because it did not provide for actual monitoring of takes by scallop dredges and did not set forth a rational estimate of takes by scallop trawls.  Therefore, Oceana filed this lawsuit.

Oceana's counsel sought to contact opposing counsel to discuss case management as early as March 21, 2007, but was not able to schedule an initial telephone conference until April

20, 2007.[3]  During that telephone conference, agency counsel informed Oceana that the agency

had begun development of yet another Biological Opinion on April 3, 2007.  Oceana was

informed that the new Biological Opinion will analyze the number of loggerhead sea turtles

taken by scallop gear considering the dramatically increased estimate presented in the February

2007 report, as well as new information on loggerhead sea turtle nesting – presumably the

alarming report noted in the September 2006 Biological Opinion that loggerhead nesting

populations have been declining, indicating that, rather than recovering, the species continues to

be driven toward extinction.  September 2006 Biological Opinion at 80.  The reinitiated

consultation threatens to delay, yet again, measures in the water to help sea turtles.

**2.    The Issuance of Dramatically Higher Take Estimates Shows That
Oceana Is Likely to Prevail**

By reinitiating consultation on April 3, 2007, to develop a new Biological Opinion to

address the new and dramatically higher estimate of loggerhead sea turtle takes by scallop trawls,

and the new evidence of declining nesting population trends, the agency has conceded that the

current Biological Opinion is no longer valid.[4]  The issuance of the increased take estimate for

all Mid-Atlantic trawl fisheries *except* scallop trawls, contemporaneous with the issuance of the

September 2006 Biological Opinion, together with the delayed issuance of the increased take

estimate for scallop trawls only after this case was filed, shows that the trawl take estimate in the

Biological Opinion is irrational.

---

[3] Oceana acknowledges that the Fisheries Survival Fund has moved to intervene in this case, but
that the Court has not yet ruled on the motion.

[4] Oceana has conferred with the agency concerning the possibility of staying the case while
placing appropriate deadlines on the issuance of the Biological Opinion, but the parties have not
reached agreement.

### 3.    Ocean Can Propose a Narrowly Tailored Remedy to Abate Irreparable Harm

With recently estimated takes of loggerhead sea-turtles dramatically exceeding the number of takes anticipated by the agency, and considering the evidence of declining nesting populations, irreparable harm is taking place during the development of the new Biological Opinion.  Furthermore, the case is not moot, because the agency has neither issued a new Biological Opinion, set a deadline for its issuance, nor acted to mitigate the impacts of scallop fishing on loggerhead sea turtles in the interim.

Oceana has analyzed the pattern of sea turtle takes in the fishery and is prepared to identify a narrowly defined area of the ocean that can be closed to scallop fishing during the summer and fall months to substantially reduce sea turtle takes.  Accordingly, Oceana anticipates moving for a preliminary injunction to protect sea turtles by imposing this narrow closure during the pendency of the case.

Because the agency has not yet filed the administrative record, and because the question of irreparable harm is typically an extra-record question, Oceana requests the opportunity to take discovery prior to its motion.  Specifically, Oceana requests that it be authorized to notice up to five depositions by May 25, 2007, and that the depositions be held by the end of the month of June 2007.  Oceana would file its preliminary injunction motion by July 20, 2007.

### B.    Oceana Anticipates the Need for a Motion to Compel Completion of the Record

Oceana requests that the Court direct the agency to file the record by June 1, 2007, within two weeks of the Initial Scheduling Conference.  For the convenience of the Court and the parties, Oceana requests that the record be filed in electronic .pdf format in searchable files.  Oceana also requests that the agency produce an index of documents in the record, and a log of documents withheld in full or in part, together with an adequate description of the withheld

documents and the grounds for the withholding, consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure. Furthermore, Oceana requests that the agency be directed to produce all non-privileged portions of documents rather than withholding in full a document in which privileged passages can be redacted.

Oceana is concerned that the record produced by the agency will not be complete. By 2005, the Fisheries Service was following an extremely restrictive policy concerning the contents of the administrative record in administrative review cases. *See Nat'l Wildlife Fed'n v. NMFS*, No. 01-640-RE, 2005 U.S. Dist. LEXIS 16655, at *6 – 7 (D. Or. March 3, 2005) (Lohn Declaration) (attached at Exhibit 1). In March 2005, the Fisheries Service formalized this policy in a written document entitled "Guidelines for Agency Administrative Records." (attached at Exhibit 2). Plaintiffs in three cases have asked courts to find that administrative records compiled according to the agency's guidelines were not complete. Three times courts have ruled for the plaintiffs on these motions and ordered the agency to complete the record. *Trout Unlimited v. Lohn,* No. 05-1128, 2006 U.S. Dist. LEXIS 28679, at *7 – 9 (W.D. Wash. May 4, 2006) (attached at Exhibit 3); *Coastal Conservation Ass'n v. Gutierrez*, No. 05-1214, (S.D. Tex. Feb. 17, 2006) (order granting motion to compel completion of the record) (attached at Exhibit 4); *Nat'l Wildlife Fed'n v. NMFS*, at *10, Ex. 1.

Oceana's counsel has asked agency counsel to clarify that the Fisheries Service will follow the rulings in the cases cited above and not follow the agency's overly restrictive guidelines, but agency's counsel has not so clarified. Furthermore, the Fisheries Service's Answer asserts an overly restrictive interpretation of the scope of the administrative record likely to result in an incomplete record. Answer ¶¶ D, 50 – 54, 61. Accordingly, Oceana anticipates that after review of the record, it may be necessary to move to complete the record.

### C.    Specific Issues Enumerated in Local Civil Rule 16.3(c)

1. As discussed above, the case is likely to be decided on summary judgment, based on review of the administrative record, and probably following a motion to compel completion of the record.

2. The parties do not anticipate being able to further narrow the factual or legal issues in this case. The parties do not anticipate joining additional parties. The parties note that the Fisheries Survival Fund has moved to intervene.

3. The parties do not desire the case to be assigned to a magistrate judge.

4-5. The parties do not believe that there is a realistic possibility of settling the case and therefore do not believe that alternative dispute resolution would be helpful.

The issues identified in paragraphs 6-14 of Local Civil Rule 16.3(c) are either discussed above or are inapplicable to this administrative review case.

### IV.    FEDERAL DEFENDANTS' STATEMENT CONCERNING CASE MANAGEMENT

As explained in the *Notice Re: Biological Opinion* (May 4, 2007), Federal Defendants already reinitiated the §7 consultation process, pursuant to the ESA, and therefore, may elect to file a motion to stay. Further litigation of the 2006 BiOp will waste resources of the judiciary and all parties, and the agency anticipates a new biological opinion will be forthcoming. The timing of the future biological opinion may be influenced by ongoing review and analysis of available information, along with an anticipated Turtle Expert Working Group report.

Even if this case is not stayed, Plaintiff is not entitled to a preliminary injunction, and based on sovereign immunity principles, a lack of subject matter jurisdiction, and Plaintiff's failure to comply with thresholds requirements of judicial review, Federal Defendants may file a motion to dismiss Plaintiff's claims. The Magnuson Act bars preliminary injunctive relief, and

requires a petition for judicial review to be "filed within 30 days." 16 U.S.C. §1855(f).  But

Plaintiff's *Complaint* (Jan. 19, 2007) uses a Sept. 16, 2006 BiOp as a basis to enjoin the entire

Atlantic sea scallop fishery, and is not timely.  The fact that Plaintiff's claims for relief rely upon

the ESA does not avoid the Magnuson Act's requirements.  As the Ninth Circuit held in Turtle

Island Restoration Network v. Dep't of Commerce, 438 F.3d 937 (9th Cir. 2006), "[t]o allow

parties to avoid this limitation through manipulation of form-avoiding mention of the Magnuson

Act in the complaint-while in substance challenging the regulations, would permit parties

'through careful pleading. . . [to] avoid the strict jurisdictional limits imposed by Congress.' "

*quoting* Cal. Save Our Streams Council, Inc. v. Yeutter, 887 F.2d 908, 911 (9th Cir. 1989); *see*

*also*, Turtle Island, 438 F.3d at 949 ("We conclude that Turtle Island's claims are a challenge to

the regulations reopening the swordfish fishery.  Accordingly, the thirty-day time limitation of

§1855(f) applies and we affirm the district court's dismissal of Turtle Island's complaint.")

Federal Defendants also note that pursuant to the APA, 5 U.S.C. §706, judicial review of

this matter is based upon an administrative record.  Agency staff informed undersigned counsel

that an administrative record is expected to be produced no later than June 1, 2007.  The policies

upon which that administrative record is produced will be explained at that time, and Federal

Defendants oppose Plaintiff's anticipatory characterization of NOAA's future actions.

Relatedly, since this case is based on an administrative record, Plaintiff's proposal for

depositions should be denied.  Plaintiff suggests a need for depositions to establish harm for

purposes of a preliminary injunction – a remarkable statement, given that Plaintiff bears the

burden of proving harm to itself.  But discovery is not appropriate in this case, because the 2006

BiOp, and the contemporaneous administrative record, provide a more than adequate basis for

this Court to conduct its review.  *See*, Preserve Endangered Areas of Cobb's History v. United

States Army Corps of Eng'rs (P.E.A.C.H.), 87 F.3d 1242, 1246-1247 (11th Cir. 1996) ("The

District Court did not err in limiting its review to the administrative record and so did not abuse

its discretion by granting a protective order prohibiting any discovery."); *see also*, Environmental

Defense Fund v. Costle, 657 F.2d 275, 285 (D.C.Cir. 1981) (surveying limited exceptions to rule

against non-record evidence); Nat'l Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68, 74

(D.D.C. 2003)("The reviewing court may, however, as it did here, permit discovery when that

will provide the only possibility for effective judicial review and when there have been no

contemporaneous administrative findings.") *citing* Saratoga Dev. Corp. v. United States, 21 F.3d

445, 457-58 (D.C. Cir. 1994).  If necessary, Federal Defendants may seek a protective order.

Based on the statements above, Federal Defendants oppose paragraphs 1 and 2 of

Plaintiff's "Specific issues enumerated in Local Civil Rule 16.3(c)."  If this case proceeds to the

merits, Federal Defendants expect this case, like many other similar cases in this District Court,

can be resolved through cross-motions for summary judgment.  Federal Defendants further

believe that the issues can be stayed, or narrowed, based on jurisdictional grounds.


Respectfully submitted:

/s/_____
Eric A. Bilsky
D.C. Bar No. 433612
Oceana, Inc.
2501 M Street, NW, Suite 300
Washington, D.C. 20037
Telephone: (202) 833-3900
Attorney for Plaintiff Oceana

/s/_____
Keith W. Rizzardi
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section

Ben Franklin Station
Post Office Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0209
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
OCEANA, INC.                          )
                    Plaintiff,        )
         v.                           )      Case No. 1:07CV00142 RBW
                                      )
GUTIERREZ, *et al.*,                  )
                    Defendants.       )
_____)

**[OCEANA'S PROPOSED] ORDER ON CASE MANAGEMENT**

The Court having considered the "Case Management Report Pursuant to Local

Civil Rule 16.3(d)" submitted by the parties and found Plaintiff's proposal meritorious; it

is hereby

ORDERED: that Plaintiff is authorized to notice up to five depositions by May

25, 2007;

ORDERED: that the depositions shall be held by the end of the month of June

2007;

ORDERED: that Plaintiff shall file its preliminary injunction motion by July 20,

2007;

ORDERED: that the Defendants shall file the administrative record by June 1,

2007;

ORDERED: that the record shall be filed in electronic .pdf format in searchable

files, and that Defendants produce an index of documents in the record, and a log of

documents withheld in full or in part, together with an adequate description of the

withheld documents and the grounds for the withholding, consistent with Rule 26(b)(5)

of the Federal Rules of Civil Procedure; and

IT IS FURTHER ORDERED: that Defendants shall produce all non-privileged

portions of documents rather than withholding in full a document in which privileged

passages can be redacted.

SO ORDERED.


Dated: _____                          _____
                                        Honorable Reggie B. Walton,
                                        United States District Judge for the
                                        District of Columbia

**EXHIBIT 1**

**CASE NO. 1:07-CV-00142 RBW**

LEXSEE 2005 U.S. DIST. LEXIS 16655

**NATIONAL WILDLIFE FEDERATION, IDAHO WILDLIFE FEDERATION, WASHINGTON WILDLIFE FEDERATION, SIERRA CLUB, TROUT UNLIMITED, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, IDAHO RIVERS UNITED, IDAHO STEELHEAD AND SALMON UNITED, NORTHWEST SPORTFISHING INDUSTRY ASSOCIATION, SALMON FOR ALL, COLUMBIA RIVERKEEPER, AMERICAN RIVERS, INC., FEDERATION OF FLY FISHERS, and NW ENERGY COALITION, Plaintiffs, and STATE OF OREGON, Intervenor-Plaintiff, vs. NATIONAL MARINE FISHERIES SERVICE, Defendant, and NORTHWEST IRRIGATION UTILITIES, PUBLIC POWER COUNCIL, WASHINGTON STATE FARM BUREAU FEDERATION, FRANKLIN COUNTY FARM BUREAU FEDERATION, GRANT COUNTY FARM BUREAU FEDERATION, NORTHWEST REQUIREMENT UTILITIES, PACIFIC NORTHWEST GENERATING COOPERATIVES, INDUSTRIAL CUSTOMERS OF NORTHWEST UTILITIES, ALCOA, INC., and INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, Intervenor-Defendants. COLUMBIA SNAKE RIVER IRRIGATORS ASSOCIATION and EASTERN OREGON IRRIGATORS ASSOCIATION Plaintiffs, vs. DONALD L. EVANS, in his official capacity as Secretary of Commerce, NOAA FISHERIES, and D. ROBERT LOHN, in his official capacity as Regional Director of NOAA Fisheries, Defendants.**

CV01-640-RE (Lead Case), CV 05-23-RE, (Consolidated Cases)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

*2005 U.S. Dist. LEXIS 16655*

**March 3, 2005, Decided**

**SUBSEQUENT HISTORY:** Motion to strike granted by, in part, Motion to strike denied by, in part, Motion to strike granted by *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 2005 U.S. Dist. LEXIS 16657 (D. Or., Apr. 8, 2005)*

**PRIOR HISTORY:** *Nat'l Wildlife Fedn v. Nat'l Marine Fisheries Serv., 2005 U.S. Dist. LEXIS 16658 (D. Or., Mar. 2, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff environmental groups and intervenor-plaintiff, the State of Oregon, filed a motion to complete the administrative record (AR) for a biological opinion (BiOp) issued by defendant, the

National Marine Fisheries Service (NMFS).

**OVERVIEW:** The NMFS filed an AR pertaining to its consultation with action agencies regarding the effect of Federal Columbia River Power Systems operations on endangered salmon species. The NMFS also submitted a declaration from its regional administrator describing what was included in the AR. Specifically, the declaration stated that materials that did not form the basis for the agency's determinations in the BiOp were excluded from the AR. Plaintiffs contended that the declaration established presumptively that the AR was incomplete. The court held that the declaration was sufficient to rebut the presumption that the agency properly designated the AR because it expressly acknowledged that the agency excluded from the AR those materials that were not relied upon in formulating

2005 U.S. Dist. LEXIS 16655, *

the determinations in the BiOp. Thus, a reasonable interpretation was that the exclusions included documents that were considered by the agency but not relied on to support the BiOp's ultimate determinations. The court further held that documents identified in the agency's privilege log should be reviewed in camera to determine if they were protected from disclosure in the AR by the attorney-client privilege.

**OUTCOME:** The court granted plaintiffs' motion to complete the AR.

**LexisNexis(R) Headnotes**

*Administrative Law > Judicial Review > Administrative Record > General Overview*
*Administrative Law > Judicial Review > Standards of Review > General Overview*
[HN1] An administrative record should include those materials that were before an agency at the time a decision was made. The record must include all documents and materials that the agency directly or indirectly considered.

*Administrative Law > Judicial Review > Administrative Record > General Overview*
*Administrative Law > Judicial Review > Standards of Review > General Overview*
[HN2] An agency may not skew an administrative record in its favor by excluding pertinent but unfavorable information. Nor may the agency exclude information on the grounds that it did not rely on the excluded information in its final decision. On the other hand, an agency may exclude arguably relevant information that is not contained in the agency's files but that may be available from third parties. In addition, an agency generally may exclude material that reflects internal deliberations.

*Administrative Law > Judicial Review > Administrative Record > General Overview*
*Administrative Law > Judicial Review > Standards of Review > General Overview*
*Evidence > Inferences & Presumptions > General Overview*
[HN3] Although an agency may not unilaterally

determine what constitutes an administrative record (AR), the agency enjoys a presumption that it properly designated the AR absent clear evidence to the contrary.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN4] A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN5] The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice as well as an attorney's advice in response to such disclosures.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN6] A government agency, like a business organization, may assert the attorney-client privilege. Hence, in the governmental context, the client may be the agency and the attorney may be the agency lawyer.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN7] A communication between an attorney and an agency must be confidential in order to be protected by the attorney-client privilege. The communication must have been intended to be confidential at the time it was made and that confidentiality must have been maintained since the disclosure.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*

[HN8] A communication is "confidential" if it is communicated: (1) with the intention that the attorney will not disclose its contents; and (2) for the purpose of securing legal advice or services.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN9] When a client is by nature a group, such as a government agency, the attorney-client privilege should not be defeated by some limited circulation beyond the attorney and the person within the group who requested the advice. The test is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication. The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential.

*Evidence > Privileges > Attorney-Client Privilege > Elements*
*Evidence > Privileges > Attorney-Client Privilege > Exceptions*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN10] When a governmental agency is asserting the attorney-client privilege, the confidentiality element will be satisfied only if the documents in question were circulated among those agency employees who are authorized to speak on the matter dealt with in the documents; if circulated to a larger group of individuals, the privilege does not apply because the agency did not maintain the confidentiality of the information.

**COUNSEL:** [*1] For National Wildlife Federation, Idaho Wildlife Federation, Sierra Club, Trout Unlimited, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, Idaho Rivers United, Idaho Steelhead and Salmon United, Northwest Sport Fishing Industry Association, Salmon for All, Columbia Riverkeeper, NW Energy Coalition, Federation of Fly Fishers, American Rivers, Inc., Plaintiffs: Daniel J. Rohlf, Pacific Environmental Advocacy Center, Portland,

OR; Stephen D. Mashuda, Todd A. True, Earthjustice Legal Defense Fund, Seattle, WA.

For Washington Wildlife Federation, Friends of the Earth, Plaintiffs: Daniel J. Rohlf, Pacific Environmental Advocacy Center, Portland, OR; Stephen D. Mashuda, Todd A. True, Earthjustice Legal Defense Fund, Seattle, WA.

For National Marine Fisheries Service, Defendant: Bridget Kennedy McNeil, Michael R. Eitel, Robert Lee Gulley, U.S. Department of Justice, Environment & Natural Resouces Division, Washington, DC; Seth M Barsky, U.S. Department of Justice, Wildlife & Marine Resources Section, Environmental & Natural Resources Div., Washington, DC; Stephen J. Odell, United States Attorney's Office, Portland, OR; Thomas L Sansonetti, [*2] U.S. Department of Justice, Washington, DC; Ruth Ann Lowery, Wildlife & Marine Resources Section, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC.

For United States Army Corps of Engineers, Defendant: Lisa L. Russell, U.S. Department of Justice, Washington, DC; Ruth Ann Lowery, Wildlife & Marine Resources Section, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC.

For U.S. Army Corps Of Engineers, U.S. Bureau of Reclamation, Defendants: Robert Lee Gulley, U.S. Department of Justice, Environment & Natural Resouces Division, Washington, DC; Lisa L. Russell, U.S. Department of Justice, Washington, DC; Ruth Ann Lowery, Wildlife & Marine Resources Section, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC.

For Northwest Irrigation Utilities, an Oregon non-profit corporation, Intervenor Defendant: Matthew A. Love, Van Ness Feldman, PC, Seattle, WA.

For Public Power Council, Intervenor Defendant: Mark R. Thompson, Public Power Council, Portland, OR; Matthew A. Love, Van Ness Feldman, PC, Seattle, WA.

For Franklin County Farm Bureau Federation, Intervenor Defendant: [*3] Hertha L. Lund, Karen J. Budd-Falen, Marc R. Stimpert, Budd-Falen Law Offices, LLC, Cheyenne, WY; Scott W. Horngren, Haglund Kirtley Kelley & Horngren, LLP, Portland, OR.

For Grant County Farm Bureau Federation, Washington Farm Bureau Federation, Intervenor Defendants: Hertha L. Lund, Karen J. Budd-Falen, Budd-Falen Law Offices, LLC, Cheyenne, WY; Scott W. Horngren, Haglund Kirtley Kelley & Horngren, LLP, Portland, OR.

For State of Idaho, Intervenor Defendant: Clay R. Smith, State of Idaho, Natural Resources Division, Boise, ID.

For BPA Customer Group, Intervenor Defendant: Mark R. Thompson, Public Power Council, Portland, OR; Matthew A. Love, Van Ness Feldman, PC, Seattle, WA; Sam Kalen, Van Ness Feldman, PC, Washington, DC.

For Clarkston Golf & Country Club, Intervenor Defendant: James W. Givens, Lewiston, ID; Rodney K. Norton, Hoffman Hart & Wagner, LLP, Portland, OR.

For Confederated Tribes of the Umatilla Indian Reservation, Amicus: Christopher B. Leahy, Daniel W. Hester, Fredericks Pelcyger & Hester, LLC, Louisville, CO.

For Confederated Tribes of the Warm Springs Reservation of Oregon, Amicus: Howard G. Arnett, Karnopp Petersen Noteboom Hansen Arnett [*4] & Sayeg, LLP, Bend, OR.

For Nez Perce Tribe, Amicus: David J. Cummings, Nez Perce Tribal Executive Committee, Office of Legal Counsel, Lapwai, ID.

For State of Montana, Amicus: Robert N. Lane, State of Montana, Department of Fish Wildlife & Parks, Helena, MT.

For State of Oregon, Amicus: David E. Leith, Department of Justice, Salem, OR.

For State of Washington, Amicus: Michael S. Grossmann, Assistant Attorney General, State of Washington, Olympia, WA.

For Northwest Power Planning Council, Amicus: John Shurts, Northwest Power & Conservation Council, Portland, OR.

For Inland Ports and Navigation Group, Port of Lewiston; Port of Whitman County, WA; Port of Morrow, OR;

Shaver Transportation Company, et al, Amicus: Jay T. Waldron, Timothy M. Sullivan, Walter H. Evans, III, Schwabe Williamson & Wyatt, PC, Portland, OR.

For Confederated Tribes and Bands of the Yakama Nation, Amicus: Tim Weaver, Law Office of Tim Weaver, Yakima, WA.

For Pacific Northwest Generating Cooperative, Amicus: Matthew A. Love, Van Ness Feldman, PC, Seattle, WA.

For Washington State Potato Commission, Eastern Oregon Irrigators Association, Columbia-Snake River Irrigators [*5] Association, Amicus: James L. Buchal, Murphy & Buchal, LLP, Portland, OR.

For Center for Tribal Water Advocacy, Amicus: Harold S. Shepherd, Shepherd Law Offices, Pendleton, OR.

**JUDGES:** James A. Redden, United States District Judge.

**OPINION BY:** James A. Redden

**OPINION:**

OPINION AND ORDER

REDDEN, Judge:

The matters before the court are the motions of plaintiffs National Wildlife Federation, et. al (# 746) and intervenor-plaintiff State of Oregon n1 (# 750) to Complete the Administrative Record for the 2004 Biological Opinion (2004BiOp) issued by defendant on November 30, 2004. *Amici* Yakima, Nez Perce, Umatilla, and Warm Springs Tribes ("Tribes") also support plaintiffs' motion. Defendant and intervenor-defendant State of Idaho oppose the motion.

> n1 The State of Oregon's motion relies on the arguments made by plaintiffs in support of their motion.

**1. Administrative Record.**

On January 28, 2005, defendant filed the Administrative Record ("AR") pertaining to its consultation with action agencies n2 regarding [*6] the

effect of Federal Columbia River Power System (FCRPS) operations on endangered and threatened salmon species. Plaintiffs assert the Administrative Record ("AR") filed with the court is incomplete. Plaintiffs contend the Declaration of Robert Lohn, defendant's Regional Administrator of the Northwest Region, who describes what is included in the AR, establishes that materials that should be included in the AR have been improperly excluded. Lohn's Declaration states in relevant part:

> 3. This Administrative Record is comprised of those documents available to me setting forth 1) the procedure NOAA Fisheries followed in its ESA § 7(a)(2) consultation with the FCRPS Action Agencies to ensure that NOAA used the best science available, 2) the factors and science considered by NOAA Fisheries for this BiOp, and 3) the basis for NOAA Fisheries' ESA conclusions based on those factors and the available science.

> 4. All remaining documents in NOAA's possession that may relate to this biological opinion but are not contained in the Administrative Record generally are internal drafts of memoranda or decision documents that were not prepared for review outside of NOAA and communications [*7] among my staff and with other federal employees that were created during the formative stages of the documents that are included in the Administrative record. They contain information or opinions that were either captured by documents that are included in the Administrative Record or which do not form the basis for the determinations in the BiOp. For this reason I do not consider them to properly be part of the Administrative Record.

(Emphasis added).

n2 The action agencies are the Bonneville Power Administration, Army Corps of Engineers, and Bureau of Reclamation. They operate dams along the Columbia River and Lower Snake River under the auspices of the FCRPS.

Plaintiffs contend Lohn's declaration leaves them "and the Court to guess at what documents and material have been withheld." In particular, plaintiffs contend Lohn's statement in paragraph 4 that materials "which do not form the basis for the determinations in the BiOp" were excluded from the Administrative Record establishes presumptively [*8] that the AR is incomplete.

Defendant asserts (1) it "has the right to designate the record on which it relied," (2) the designation is presumed to be regular; (3) plaintiffs have not established "they come within any of the authorized exceptions that allow the introduction of "extra-record evidence," and (4) the federal court should not take on the role of "creating a new record" that is "different from that provided by the agency."

Defendant-Intervenor State of Idaho asserts it is just as interested in obtaining a complete AR as plaintiffs. Idaho, however, asserts plaintiffs have failed to make a strong showing to rebut the presumption of regularity in defendant's compilation of the AR filed with the court.

[HN1] An AR should include those materials "that were before the agency at the time the decision was made." *Fund for Animals v. Williams, 245 F. Supp.2d 49, 55 (D. D.C. 2003)*. The record must include all documents and materials that the agency "directly or indirectly considered.'" *Id.*; *Thompson v. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989)*; *Water Land Exchange Project v. Dombeck, 47 F. Supp. 2d 1196, 1205 (D. Or. 1999).* [*9]

[HN2] "The agency may not skew the record in its favor by excluding pertinent but unfavorable information. Nor may the agency exclude information on the grounds that it did not rely on the excluded information in its final decision. On the other hand, an agency may exclude arguably relevant information that is not contained in the agency's files but that may be available from third parties. In addition, an agency generally may exclude material that reflects internal deliberations." *Fund for Animals, 245 F. Supp.2d at 55.*

[HN3] "Although an agency may not unilaterally determine what constitutes the [AR], the agency enjoys a presumption that it properly designated the [AR] absent clear evidence to the contrary." *Id*; *Bar MK Ranches, 994 F.2d 735, at 739-40* (the AR enjoys the same

Case 1:07-cv-00142-RBW    Document 15-3    Filed 05/04/2007    Page 7 of 8

Page 6
2005 U.S. Dist. LEXIS 16655, *9

presumption of regularity afforded to other established administrative procedures); *Amfac Resorts, LLC v. United States DOI, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)* (noting the "standard presumption" that the agency designated the AR properly); *Zeneca Inc. v. Shalala, 1999 U.S. Dist. LEXIS 12327, 1999 WL 728104, at *3 (D. Md. Aug. 11, 1999)* (observing that the AR enjoys a presumption of regularity).

Here the court agrees with [*10] plaintiffs and the State of Oregon that Lohn's statements strongly suggest materials that were before the agency and considered by the agency, though not forming "the basis for the determinations in the BiOp," have been excluded from the AR. The court concludes Lohn's statements in paragraph 4 of his declaration are sufficient, standing alone, to rebut the presumption of regularity. The court reads his statements to expressly acknowledge materials were excluded from the AR because Lohn did not rely on them in formulating the determinations for the 2004BiOp. A reasonable interpretation is that the exclusions included documents that were considered by the agency, but not relied on to support the BiOp's ultimate determinations.

Moreover, the court concludes that neither plaintiffs nor this court are seeking to insert "extra-record" materials in the AR or to create a "new record." The goal is to establish a complete record of the consultation between defendant and the action agencies, including both the positive and negative (if any) recommendations pertaining to the ultimate no-jeopardy opinion. Accordingly, the court concludes the AR, as now filed, is incomplete.

At oral argument, [*11] Mark Eames, defendant's agency counsel, advised the court that defendant has an index of approximately 500 documents, and an additional 300 documents that are not indexed, that fall within the type of materials Lohn excluded from the AR. The court orders defendant to add the 500 indexed documents to the AR no later than 5:00 p.m. on March 14, 2005. After those documents have been reviewed, a determination will be made whether defendant must prepare the 300 unindexed documents for possible inclusion in the AR.

## 2. Attorney-Client Privilege.

Defendant has identified 15 categories of documents that have been withheld from the AR based on attorney-client privilege. Plaintiffs assert defendant has

failed to meet its burden of establishing the attorney-client privilege applies, because the description of the privileged documents is inadequate. Plaintiffs urge the court to conduct an *in camera* review to determine if the documents listed by defendant are privileged.

[HN4] A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication. *Ralls v. United States, 52 F.3d 223, 225 (9th Cir.1995)*. [*12] [HN5] "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996)*.

[HN6] A government agency, like a business organization, may assert the attorney-client privilege. *Coastal States Gas Corp. v. Dep't of Energy, 199 U.S. App. D.C. 272, 617 F.2d 854, 863 (D.C. Cir.1980)*. Hence, "in the governmental context, the client may be the agency and the attorney may be the agency lawyer." *In re Lindsey, 331 U.S. App. D.C. 246, 148 F.3d 1100, 1104 (D.C. Cir. 1998)* (internal citations omitted).

[HN7] A communication between an attorney and an agency must be confidential in order to be protected by the attorney-client privilege. *Coastal States Gas Corp., 617 F.2d at 863*. The communication must have been intended to be confidential at the time it was made and that confidentiality must have been maintained since the disclosure. *Id.* [HN8] A communication is "confidential" if it is communicated: (1) with the intention that the attorney will not disclose its contents; and (2) for the purpose of securing [*13] legal advice or services. *Eugene Burger Mgmt. Corp. v. United States Dep't of Housing and Urban Dev., 192 F.R.D. 1, 5 (D.D.C.1999)*.

[HN9] "When the client is by nature a group [such as a government agency], the courts have agreed that the privilege should not be defeated by some limited circulation beyond the attorney and the person within the group who requested the advice. The test . . . is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication. The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know

them, there is nothing on which to base a conclusion that they are confidential." *Wyoming v. USDA, 239 F. Supp. 1219, 1230 (D. Wyo. 2002)*, citing *Coastal States Gas Corp., 617 F.2d at 863*.

"In sum, [HN10] when a governmental agency is asserting the attorney-client privilege, the confidentiality [*14] element will be satisfied only if the documents in question were circulated among those agency employees who are authorized to speak on the matter dealt with in the documents; if circulated to a larger group of individuals, the privilege does not apply because the agency did not maintain the confidentiality of the information." *Id.*

Here, the court agrees that the documents identified in the privilege log should be reviewed *in camera* to determine if they are indeed protected from disclosure in the AR by the attorney-client privilege. At oral argument, the court and the parties agreed it would be appropriate for another federal judge in this district to accomplish that task. The Honorable Garr M. King has agreed to undertake the *in camera* review.

Accordingly, the court orders defendant to deliver under seal to Judge King all documents included in defendant's privilege log no later than 5:00 p.m. on March 8, 2005.

IT IS SO ORDERED.

DATED this 3rd day of March, 2005.

James A. Redden

United States District Judge

**EXHIBIT 2**

**CASE NO. 1:07-CV-00142 RBW**

Department of Commerce ♦ National Oceanic & Atmospheric Administration ♦ National Marine Fisheries Service

| |
|---|
| **NATIONAL MARINE FISHERIES SERVICE POLICY DIRECTIVE 30-123** <br> **JUNE 1, 2005** |
| **Administration and Operations** |
| **ADMINISTRATIVE RECORDS GUIDELINES** |
| **NOTICE:**  This publication is available at:  http://www.nmfs.noaa.gov/directives/. |
| **OPR:  F/P** (A.Gautam)                    **Certified by:** Certified by F/P (M. Holliday) <br> **Type of Issuance:**  Initial |
| *SUMMARY OF REVISIONS:* |

Introduction.  All regions, science centers, and most headquarters offices of the National Marine Fisheries Service (NMFS) are involved in the promulgation of regulations. Development of policy that leads to rulemaking generates information and decisions that constitute an administrative record of the process.  Proper documentation of these steps and associated data on which decisions are based is a fundamental part of the public policy responsibilities of the Agency. The purpose of issuing guidelines for administrative recordkeeping is to ensure efficient and effective compliance and implementation by NMFS of the applicable law and regulations on administrative records.

Objective.  Ensuring consistent, complete and compliant administrative records of Agency policy and regulatory decisions is an essential function of a resource management agency.

Authorities and Responsibilities.  This directive establishes the following authorities and responsibilities:

 Directors of regions, centers and headquarters offices have the responsibility to implement the provisions of the administrative records guidelines found in Procedural Directive 30-123-01.

Measuring Effectiveness.  The NMFS Deputy Assistant Administrator for Regulatory Programs shall periodically assess the compliance with and utility of the Administrative Records Guidelines, and implement remedial actions with the Directors or changes to the guidelines, using the Policy Directives process, as circumstances dictate.

References.   A Procedural Directive will be issued to implement this policy.

____/S/_____June 1, 2005___

William T. Hogarth, Ph.D.                        Date
Assistant Administrator
  for NOAA Fisheries

Attachment 1
**GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**

***References***
NMFS Procedural Directive 30-123-01, *NOAA Fisheries Guidelines for Agency Administrative Records*

Department of Commerce • National Oceanic & Atmospheric Administration • National Marine Fisheries Service

| |
|---|
| ***NATIONAL MARINE FISHERIES SERVICE INSTRUCTION 30-123-01*** <br> ***MARCH 1, 2005*** |
| ***Administration and Operations*** <br> ***Administrative Records Guidelines*** |
| ***GUIDELINES FOR AGENCY ADMINISTRATIVE RECORDS*** |

**NOTICE:** This publication is available at: http://www.nmfs.noaa.gov/directives/.

**OPR:** GCF (S. Rauch)                    **Certified by:** F/ (W. Hogarth)

**Type of Issuance:** Initial

*SUMMARY OF REVISIONS:*


Signed _____

[Approving Authority name]                    Date

[Approving Authority title]

# NOAA FISHERIES

# Guidelines for
# Agency Administrative Records

March 2005

**Table of Contents**

I. INTRODUCTION ...................................................................................................1

II. ADMINISTRATIVE RECORDS .........................................................................1
    A. Documents to Include in an Administrative Record.......................................4
    B. Documents Not to Include in an Administrative Record ...............................6
    C. Organizing and Indexing an Administrative Record for Litigation ..............9
    D. Potential Consequences of Incomplete Administrative Record in Litigation . . . . . . .10
    E. Interplay between FOIA and an AR .............................................................10

III. FEDERAL RECORDS REQUIREMENTS ........................................................11

IV. FREEDOM OF INFORMATION ACT ..............................................................12

APPENDIX A. Magnuson-Stevens Act Administrative Records .................................14

## I. INTRODUCTION

NOAA Fisheries keeps records for three separate purposes. First, the agency must maintain records to protect the public interest in government documents and materials. Second, the agency for its own business purposes, and occasionally for public viewing, keeps a docket of information relating to a specific decision. Third, when a NOAA Fisheries decision is challenged in court, the agency must produce a subset of these documents to the court.

The Guidelines focus primarily on aiding NOAA Fisheries program managers and record officers in the latter type: producing for a court accurate, reliable and complete administrative records that support agency decisions, records often subject to production under tight deadlines. The discussion of administrative records is followed by a brief description of the federal record laws, which require maintenance of records other than those included in administrative records, and the Freedom of Information Act, which applies to all federal records whether or not they are included in an administrative record.

## II. ADMINISTRATIVE RECORDS

The term "administrative record" can be used to mean a compilation of documents[1] that the agency maintains to track its decision-making process, or it can mean the subset of those documents that is compiled and produced to a court to demonstrate the decision-making process and the basis for a final agency decision.[2] The Guidelines will use "administrative record" (AR)

---

[1]  The legal term for all agency materials is "records." "Records" are defined in 44 U.S.C. § 3301 as:

> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included.

To avoid confusion of the term "record" with the term "administrative record", these Guidelines use the word "documents" to refer to individual records, specifying as necessary records other than paper documents.

[2]  As discussed in Section III below, agencies are required to create and retain documents in order to recognize and protect the public's interests in government records.

1

to refer to the record produced for litigation, and "docket" to describe the record maintained by the agency to document the development of a specific agency decision.[3]   Many documents that would not be included in an AR should still be maintained in a docket, and pursuant to federal record-keeping requirements.   This section of the Guidelines focuses on producing ARs for litigation.

When an agency decision is challenged, the Administrative Procedure Act (APA)[4] provides that a court review an agency's action to determine if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.   Most cases challenging agency decisions are decided on summary judgment, that is, without a trial in which there is witness testimony.  The AR is the government's "evidence" in the case, evidence that would otherwise be gathered through presentation of witnesses and exhibits to the court.  The court therefore relies solely on the agency's AR to determine the legal adequacy of the particular agency action being challenged.   Accordingly, the agency should present an AR that demonstrates compliance with procedural requirements and the full rationale for the agency's decision.

Neither the APA nor any of NOAA's statutes or directives provide further guidance on the specific contents of an AR.   The content has been addressed, however, in numerous court decisions.   These guidelines have been adapted from those decisions and guidance provided from the Environmental Protection Agency,[5] Department of Justice, and NOAA's Damage Assessment and Restoration Program.[6]

The AR first must document the process the agency used in reaching its final decision in order to show that the agency followed required procedures.  For NOAA actions, procedural requirements include the notice and comment provisions of the APA, the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act), the National

---

Whether a document should be retained for agency record keeping is a different consideration from whether it should be included in an administrative record.  Generally, an administrative record is a small subset of all documents on any particular topic.

[3]   Note that the agency generates documents, such as minutes of Leadership Council and other committee meetings, that do not relate to a specific agency decision.   While the agency would not include them in a docket, as the term is used in these Guidelines, or in an AR, the agency may need to retain such documents pursuant to broader record-keeping requirements.

[4]   Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

[5]   Development and Management of Administrative Records, Carrie Wehling, Marilyn Kuray, Mark Stein, May 2002, presentation at EPA's OGC National Counseling Attorneys' Conference.

[6]   National Resource Damage Assessment (NRDA) Administrative Record Procedures Manual, NOAA Damage Assessment and Restoration Program, August 2001.

Environmental Policy Act (NEPA),[7] the Regulatory Flexibility Act,[8] the Information Quality Act,[9] the Coastal Zone Management Act,[10] and the Endangered Species Act (ESA).[11]  While an AR need not demonstrate compliance with procedural policies in executive orders, such as in Executive Orders 12866 and 13132, this information should be maintained as part of the agency's docket for a decision.

The AR must also explain and rationally support the agency's decisions.  The AR must show the agency has met the legal standards and criteria found in applicable laws, regulations, and relevant agency policies (e.g., <u>Consultation Handbook: Procedures for Conducting Consultation and Conference Activities Under Section 7 of the Endangered Species Act</u>, March 1998).  When use of the "best available science" is required, the AR generally must contain documents that address and analyze this topic.  Particularly, the AR should document consideration of opposing points of view, and provide a thorough explanation as to why the preferred course of action was adopted.  This information should be addressed in NEPA documents, preambles to final regulations, and when appropriate, ESA section 7 biological opinions.

In order to ensure the AR is a contemporaneous record of the agency's decision-making process (and to avoid misplacement of documents), a program manager should create a docket once consideration of a decision begins, and should compile and organize documents as they are generated or received.  Program managers should not wait until litigation is filed to begin a docket for the decision.   When a lawsuit is filed, program managers should work closely with NOAA General Counsel in reviewing documents in the docket to determine which of the documents in the docket should be included in the AR.  Taking great care in compiling a complete AR for a lawsuit is critical for the agency.  Having a complete, organized docket ready when a lawsuit is filed will greatly enhance the agency's ability to compile a complete AR.

## A.  Documents To Include In An Administrative Record

Documents to include in an AR for a lawsuit will include paper documents, but may also include other means of communication or ways of storing or presenting information.  Data files, graphs, charts and photos may also be included in some cases.  The following two threshold principles can be used in evaluating whether to exclude a document from an AR: (1) relevance; and (2) significance.  (These guidelines are also useful for determining what should be included in a docket.)  If a document is either irrelevant or insignificant, it should not be included in the AR.

---

[7]  42 U.S.C. § 4341.

[8]  5 U.S.C. § 601 *et seq.*

[9]  Pub. L. No. 106-554, § 515

[10]  16 U.S.C. § 1451 *et seq.*

[11]  16 U.S.C. § 1531 *et seq.*

**Relevance**

NOAA Fisheries should evaluate only relevant documents for inclusion in ARs.   A document is relevant if it relates to the agency decision that is being challenged, i.e., it has a logical connection to the matter under consideration.  Relevant documents are documents that establish background or context for the agency's action, as well as documents that oppose or support the agency's final action.  Relevant documents also include documentation of procedural requirements, such as NEPA and RFA analyses, as well as the agency's substantive decision.

Because relevancy determinations can be difficult, and will affect the content of the AR and therefore the defense of the case, these determinations should be made in consultation with the NOAA General Counsel, who may also consult with Department of Justice attorneys assigned to the case.

**Significance**

A document is significant if it bears directly on the substantive issues examined by the agency while undertaking its decision-making process relating to the final action.  If a document contains information and deliberations relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker), then the document is significant. Significant documents are a subset of relevant documents.  A document may be relevant, but not significant to the agency's decision.

The concept of significance is important to AR preparation due to the potentially vast numbers of documents that might contribute in some way to the agency's decision in a particular case. There is no statutory, regulatory, or judicial principle that "more is better" for an AR; indeed, the judicial review process often suffers from unduly large ARs filled with large quantities of marginal or insignificant documents that do not bear on the decision under review.   If a document is not significant, it should not be included in the AR.

Electronic documents provide a good example of the issue of significance.  In the electronic information age, huge numbers of electronic documents are created, transmitted and stored. These documents are largely of an informal and individual nature – one employee making a comment to other employees about some aspect of a pending decision.  Such communications are rarely, if ever, transmitted to the decision-maker and should be excluded from an AR.  See discussion of E-Mails, Section II.B. below.   Even if a document is both relevant and significant, it may still not be appropriate for inclusion in the AR.  Set forth below are guidelines for what documents should, and should not be, included in an AR.

4

**The following kinds of information should be included in the AR:**

- Relevant, significant documents relied on by the decision-maker, or incorporated by reference in documents relied on by the decision-maker, whether or not those documents support the final agency decision.

- Any AR that supports earlier decisions, if relevant; the agency must include the index of such an earlier AR, and then determine whether to include all, some or none of the documents.

- Relevant, significant background documents that help explain the context in which the decision was made.

- Relevant policies, guidelines, directives, and manuals where central to decision; these should be cited, and incorporated by reference as appropriate, but not included.

- Comments the agency received during the public review process from other agencies and the public, and the agency's responses to those comments.

- Reference documents (any document or scientific literature cited in any pertinent decision document (e.g., NEPA analyses)) must be identified in the AR index; the agency determines whether to include all or part of the document in the record.

- Summaries of relevant, significant meetings with members of the public to discuss the agency's proposed action; when prepared minutes of such meetings have been provided to the decision-maker, those minutes should be included in the AR. (Note that all such meetings should be documented to avoid the appearance of improper ex parte contact, regardless of whether that documentation is included in an AR.)[12]

- The final decision document (most agencies use a "decision memorandum") signed by the agency official with delegated authority to make a decision on behalf of the agency. In the case of external ESA consultations under Section 7(a)(2), the final decision document is the biological opinion or a determination that an action will not affect, nor is it likely to adversely affect, a listed species. In the case of the Magnuson-Stevens Act, it is the final decision document accompanying implementing regulations.

---

[12]An outside party seeking to provide substantive oral comments to NOAA Fisheries Service respecting the merits of a decision should be requested to provide a written record of their comments. If oral comments are nonetheless received, a summary of the oral communication (written by NOAA Fisheries Service) should be prepared for inclusion in the AR. All meetings between NOAA Fisheries Service and non-Executive branch parties to discuss a pending decision must likewise be on the record with a written summary of the meeting prepared for the AR. The summary must include a description of arguments and information presented by the outside party.

All documents in an AR should be dated, with authorship indicated. Undated, unattributed documents are less likely to be appropriate because it is difficult to tell how they fit into the agency's decision-making process. Similarly, documents prepared for signatures should be signed, and copies of the signed versions of the documents placed in the AR.

Different decision-making procedures and different types of decision documents are used depending on which statute is being applied. Different processes can result in ARs that differ, sometimes considerably, in the number of documents involved. Still, the goals of the AR remain the same - - to show the agency followed required procedures, and to show its substantive decision is rational and is supported by the evidence before the agency. Therefore, when assembling the AR, program managers should consider: (1) what procedures were required, what procedures were followed and how they were documented; and (2) what was the basis for the agency's choice of actions and how it was documented. Appendix A provides background on the preparation of an AR for Magnuson-Stevens Act actions.

## B.  Documents Not To Include In An Administrative Record

**Documents not in existence until after the agency decision.**

Documents not in existence at the time of the agency decision must be excluded from the AR. Program managers should consult with NOAA General Counsel if there are subsequent documents that nevertheless may be relevant to a lawsuit, as in the case of a legal challenge to an ongoing agency action, or failure to act.

**Personal notes**

Personal notes, such as an individual's notes taken at a meeting or journals, maintained by an individual for his or her own use, should not be included in an AR.[13] If those notes contain information relevant to an agency action, staff should include that information in the final decision document or supporting documents accompanying the final decision document through the approval process.

**Drafts**

The AR should not include internal "working documents"or "working drafts." Working documents are those that relate to routine administrative operations (such as fax cover sheets). Working drafts are draft decision documents, draft regulations or drafts of official agency work products (e.g., biological opinions or permits) that are circulated within the agency.  Working

---

[13]  These documents – as well as drafts, privileged documents, and E-Mails – may contain information demonstrating development of agency policy and decisions.  Therefore, even though these documents should not be included in an AR, the agency may be required to retain these documents in dockets or in other record-keeping systems pursuant to the Federal Records Act.  See Section III below.

drafts sometimes contain unique information.  For example, a draft may contain and explain a change from an earlier draft, or a draft may contain significant handwritten notes.  Working drafts of this type should be retained as part of the agency's record-keeping requirements.  For purposes of an AR, unique information contained in these drafts should be summarized in the decision memorandum, which would be placed in an AR in lieu of the working drafts themselves.

**Protected Documents**

Protected documents are those the government is prohibited from disclosing.  Protected documents include those containing information protected by the Privacy Act or other statute, and those documents that are confidential as a result of a court order.  As a general rule, protected documents are not included in an AR.  Exceptions exist, however, such as when protected documents contain critical factual information supporting the agency's decision.  In that case, those documents should be identified in the index to the AR, but not produced to the reviewing court or other parties to the case.  Protected documents should not be revealed to the parties or their attorneys without a court order, but may potentially be reviewed a court**.**

**Privileged Documents**

Privileged  documents are those the government may choose to withhold.  Relevant privileges and prohibitions against disclosure include, but are not limited to, attorney-client documents (including legal memoranda prepared by agency counsel); attorney-work products; and documents reflecting the agency's internal deliberative process.  Privileged documents should not be included in the AR.

The agency's "mental processes" – the healthy internal discussions reflecting staff viewpoints – are ultimately not relevant to a court's decision as to whether the agency followed the law in its final decision.  The deliberative process privilege and attorney-client communication privilege protect these healthy discussions so that the participants will feel that they can be candid.  Excluding these documents from the AR maintains the court's proper focus on the agency's decision and supporting information.  In exchange, however, the decision document presented to the decision-maker must be robust in summarizing and presenting the factual and policy support for a recommended decision.

**E-Mails**

E-Mails should never be used as the formal agency documentation of decision or as support for the agency's decision.  Generally, the decision-maker himself or herself rarely sees any of the E-Mails.  Therefore, E-Mails should not be included in an AR.  If an E-Mail contains factual information or analysis relied on to make an agency decision, then the content of that E-Mail should be included in the final decision document, or supporting memoranda relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker).  While this requires additional work from program staff, this practice will eliminate non-related E-Mail correspondence that is often intertwined with decision-making correspondence in the AR.

Even though E-Mails should not be included in an AR, they may still constitute a federal record, or be the subject of a FOIA request, and therefore staff should always consider their use of E-Mail carefully. E-Mails are both overused and misused as a form of communication among agency staff. E-Mail is intended for official and authorized purposes. E-Mail messages are not private and could possibly be used in court as evidence. A sloppy or ill-considered or even humorous E-Mail in the course of conducting or commenting on the agency's business could be released in response to a FOIA request or circulated outside the agency. Once that happens, the E-Mail is public.

Moreover, "chain" E-Mails are a particularly ineffective way to discuss and resolve important substantive issues. These types of E-Mails often invite inappropriate commentary from one or more of the participants, quickly become impossible to follow (or to know where they begin or end), and, as various headers are deleted, can leave quite misleading impressions as to who said what to whom, when, and why. In addition, it is impossible to control their distribution.

E-Mail problems can be avoided by using a different method of communication such as a telephone or face-to-face meetings. For example, if staff find that they need to write more than a few lines in an E-Mail, they could use the telephone, or set up a meeting, and have a conversation instead. As noted above, if an important topic needing elaboration is being discussed in E-Mail, staff should follow-up the E-Mail discussion with preparation of a formal memorandum that would be appropriate for submission to the decision-maker and  inclusion in the AR. Formal decision documents such as a "Decision Memorandum" should be used to document the agency's decision and rationale. Once the information in the E-Mail has been summarized in a decision memorandum, the E-Mail may be discarded, unless the agency's general record-keeping obligations require its retention.

## C.  Organizing and Indexing an Administrative Record for Litigation

A court reviews the agency action based on the AR before the agency at the time the decision was made. The AR is the agency's evidence that its decision and decision-making process comply with relevant statutory and regulatory requirements. All agency findings and conclusions and the bases for them must appear in the AR. A complete AR allows the court to determine the agency's decision meets the appropriate APA standards and other relevant laws.

The following are the common steps in compiling an AR for litigation.

- Review the docket compiled as the decision was being made, and determine which documents should be included in the AR.

- Organize the documents to be included in the AR in a logical and accessible way in chronological order and/or by topic.

- Separate documents that do not fit into a chronological order by category (e.g., internal policies, references, guidelines, handbooks, or manuals).

- Prepare an index to the AR. The index should identify each document (or other material)

by date and type and include the title and/or a brief description of the document or material.

- Provide the proposed AR to the NOAA case attorney. The NOAA case attorney will review to see if additional documents should be included or if there are irrelevant, insignificant, protected or privileged documents that should be excluded.

- Once the AR is final, the AR and index must be certified as the official and complete record of the decision, first by someone who is familiar with the AR and second, by one of the officials authorized to certify ARs under the seal of the Department of Commerce.

- Consult with the NOAA case attorney to determine next steps for making the AR available to the court and the parties to the lawsuit.

- In some instances, the court will accept for filing the certified index of the AR, in lieu of filing the AR itself. Copies of the documents in the AR are then made available to the parties to the litigation for inspection and copying. Selected portions of the AR are included as exhibits to the parties' summary judgment motions. This approach should be NOAA's preferred mode.

- If the court will not accept a certified index in lieu of the complete AR, consult with the NOAA case attorney concerning the proper format for submitting the AR to the court and parties. Many courts have local rules that specify particular formats. These rules are not uniform. For example, some courts will accept 3-ring binders, while others will not. Some courts require Bate-stamping of each page, other courts do not. At the present time, most courts will not accept an electronic AR but others require one.

- Very large ARs present special problems if the court will not allow NOAA to file a certified index of the AR in lieu of the AR itself. In that instance, if a voluminous document is part of the AR, that one document could be described in the AR index, not included in the AR filed with the court, and the court advised that it is "available upon request." If this approach is taken, staff must ensure that the document is indeed available and a copy can be supplied upon request.

- When the original AR is in final form and the index and certification are complete, it is ready to be copied. The case attorney will determine how many copies are needed. If the AR must be filed with the court, there will be at a minimum one for each party and intervener in the case, one or more for the Justice Department, and one or more for the court. The NOAA case attorney will provide the necessary addresses, and the program manager will ship the copies of the AR.

D.  Potential Consequences of an Incomplete Administrative Record in Litigation

Agencies can best determine what information was presented to a decision-maker, and accordingly, the agency is in the best position to certify what its AR is for any decision.  If a court deems an AR incomplete, the court may allow the agency to provide additional documents, or to submit affidavits.  Once the government supplements the AR with affidavits or testimony, however, the opposing party may attempt to depose program staff and/or submit additional affidavits or testimony even though such actions are rarely appropriate under the APA.  The court may allow discovery when a party has proffered sufficient evidence suggesting bad faith or improprieties that may have influenced the decision-maker.  Discovery could include written interrogatories to the agency or depositions of agency personnel.

E.  Interplay between FOIA and an AR

Sometimes potential plaintiffs prepare for litigation by seeking agency documents with a Freedom of Information Act (FOIA) request, either before filing a lawsuit or at the same time.  See Section IV for a discussion of FOIA.   Responding to a FOIA request differs from preparing an AR.  Preparing an AR requires consideration of all of the factors discussed above.  FOIA requests, however, are usually broadly worded and can include requests for documents that NOAA might view as irrelevant or insignificant to the decision at issue.  Because of this, responding to a FOIA request generally involves providing all documents on a topic, other than privileged or protected documents, regardless of relevance or significance to a particular agency decision.   It is important to note that if a document is released pursuant to a FOIA request, any privileges that might have applied will have been waived.   Thus, the agency may not be able to assert privileges with respect to that document in any other circumstance.

It is critical therefore that program staff consult with NOAA GC whenever a FOIA request is received that seeks administrative record materials and that relates to a final action that the agency has taken or will take.  Agency staff should consult with NOAA GC prior to releasing those documents and inadvertently waiving those privileges.

III.  FEDERAL RECORDS REQUIREMENTS

The federal records statutes recognize and protect the public's interests in government documents and other materials, regardless of whether the agency needs such documents and materials for an AR or a docket.  Agencies are required by law to make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency.  In addition, each agency must develop a records management system in which records must be properly stored and preserved, available for retrieval, and subject to appropriate approved disposition schedules.  As noted above, agencies will retain many records in its record management system that would not be appropriate for inclusion in an AR or a docket.

"Records" are defined in 44 U.S.C. § 3301 as:

> all books, papers, maps, photographs, machine readable materials, or other
> documentary materials, regardless of physical form or characteristics, made or
> received by an agency of the United States Government under Federal law or in
> connection with the transaction of public business and preserved or appropriate
> for preservation by that agency or its legitimate successor as evidence of the
> organization, functions, policies, decisions, procedures, operations, or other
> activities of the Government or because of the informational value of data in
> them. Library and museum material made or acquired and preserved solely for
> reference or exhibition purposes, extra copies of documents preserved only for
> convenience of reference, and stocks of publications and of processed documents
> are not included.

Federal records requirements are found in 44 U.S.C. Chapter 29 (44 U.S.C. §§ 2901-2909,
"Records Management by the Archivist of the United States and by the Administrator of General
Services"), Chapter 31 (44 U.S.C. §§ 3101-3107, "Records Management by Federal Agencies"),
and Chapter 33 (44 U.S.C. §§ 3101-3107, "Disposal of Records"). These laws are administered
by the National Archives and Records Administration (NARA), the General Services
Administration (GSA), and each federal agency, including NOAA. NARA has promulgated
extensive implementing regulations at 36 C.F.R. Subchapter B (Parts 1220 (General Provisions),
1222 (Creation and Maintenance of Federal Records), 1228 (Disposition of Federal Records),
1230 (Micrographic Records Management), 1232 (Audiovisual Records Management), 1234
(Electronic Records Management), and 1236 (Management of Vital Records)). The NARA
Records Management Handbook is at:
http://www.archives.gov/records_management/publications/disposition_of_federal_records/
The NOAA Records Management Guide is at:
http://www.rdc.noaa.gov/~foia/asdhome/recguide-rev.htm.

Requirements for E-Mail management are at 36 C.F.R. Part 1234. They are found at:
http://ecfr.gpoaccess.gov/cgi/t/text/textidx?c=ecfr&sid=81c67f5d7fac7487acfa6b86cdceabc&tpl
=/ecfrbrowse/Title36/36cfr1234_main_02.tpl

The Department of Commerce E-Mail policy is at http://www.rdc.noaa.gov/~foia/asdhome/rec-
email-rev.htm. According to the current DOC policy, all E-Mails that meet the definition of a
federal record, above, should be printed (including the essential transmission data) and filed with
related paper records. Even though E-Mails may need to be included in a records management
system, E-Mails are not to be included in an AR as documentation of agency compliance. As
noted above, if staff wishes to present information to the decision-maker or to document
compliance with a procedural requirement, staff should include that information in the final
decision document or a supporting document presented or made available to the decision-maker.

For records management purposes, "working files" or "working drafts," should not be retained
unless they were circulated outside of the agency for official purposes, or if such documents
contain unique information necessary to understanding the agency's action or policy formulation
(see 36 C.F.R. § 1222.36(c)). Therefore, once drafts cease to be useful, they should be discarded

unless (1) they have been circulated outside the agency for public or other agency comment, or, (2) they contain annotations that are significant and relevant to the agency's decision-making process.

Drafts are sometimes useful to staff for tracking the development of a record (for example, a fishery management plan) over time, and as a future reference for material that may not appear in the final record such as handwritten formatting, editing or instructional comments. Drafts used for these purposes, however, are not "federal records" and should therefore not be placed in a records management system; they should be discarded as soon as their usefulness is past.

## IV. FREEDOM OF INFORMATION ACT

The Freedom of Information Act (FOIA) mandates public access to government records under certain circumstances. It requires that "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person" (5 U.S.C. § 552(a)(3)(A)). There are nine exemptions that allow the agency to withhold a record from release to the public (5 U.S.C. 552(b)). The nine exemptions are:

> (1) national defense or foreign policy records that have been properly classified;
>
> (2) internal agency personnel rules and practices;
>
> (3) matters exempted from disclosure by a federal statute;
>
> (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;
>
> (5) inter- or intra- agency memorandums or letters that would not be available by law to a party other than a party in litigation with the agency;
>
> (6) personnel, medical, and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> (7) certain records compiled for law enforcement purposes;
>
> (8) records pertaining to regulation or supervision of financial institutions; and
>
> (9) geological and geophysical information concerning wells.

FOIA defines "record" as any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format. 5 U.S.C. 552(f)(2). The Supreme Court has fashioned a two-part test for determining what constitutes agency records under FOIA. "Agency records" are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA

request.  "Agency records" are distinguished from "personal records" which are not subject to FOIA.  "Personal records" are generally records maintained by agency personnel for their own use and not made a part of the agency filing system.

There is a formal system for receiving and responding to FOIA requests.  Decisions as to whether to release records under FOIA are not made by the individual employees who generated or are in possession of the records.  Rather, any decision to withhold NOAA Fisheries records is made through the formal process, and culminates in a decision by the Assistant Administrator for Fisheries, which may be appealed to the Department of Commerce General Counsel.  Further, it is critical to consult with NOAA GC before releasing documents pursuant to a FOIA request that pertain to a final or an anticipated decision that has been or could be challenged.

Records managers should be aware that once a FOIA request is received, agency records that are responsive to the request may not be discarded, even if they are records that would normally not be part of an AR and otherwise <u>discarded</u> in the ordinary course of business.

For further information on FOIA, consult the U.S. Department of Justice's Office of Information and Privacy <u>Freedom of Information Act Guide & Privacy Act Overview</u>, May 2004.

For further information on processing FOIA requests to NOAA Fisheries, please refer to the NOAA FOIA Web site at <u>http://www.ofa.noaa.gov/~foia/</u>.  The Web site contains detailed information on FOIA fees, appeals, policies, and training, among other things.

**APPENDIX A.  Magnuson-Stevens Act Administrative Records**

An AR for a Magnuson-Stevens Act action (decision), although it may comprise many volumes, is relatively easy to conceptualize, because agency actions under the Magnuson-Stevens Act generally follow a well-established public process through the Fishery Management Councils (Council).  NOAA Fisheries has also formalized a consistent set of internal procedures for agency decision-making.  In addition, the substantive standards and legal tests for fishery management actions are relatively clear, and are spelled out in the Magnuson-Stevens Act and implementing regulations in the form of required and discretionary contents of FMPs, National Standards, and other specific legal requirements that should be addressed in the agency's decision documents.  Fishery management actions must also comply with "other applicable law." The AR must therefore demonstrate compliance with other applicable law including, but not limited to, NEPA, the RFA (if the action is accompanied by proposed and final rulemaking), the Paperwork Reduction Act (if the action contains an information request), the ESA, Indian tribal treaty fishing rights, and the Coastal Zone Management Act.

Although the fishery management process is complex, most steps require Federal Register notices, preparation and distribution of formal Council and/or NOAA Fisheries documents, and a formalized process for obtaining and responding to public comments.  NOAA Fisheries and the Council should have appropriate filing and indexing systems, with electronic indexing technology to facilitate identifying and assembling the hard copy AR and index.  Even with electronic filing and indexing systems, however, staff knowledgeable about the challenged decision must be involved in compiling the AR to ensure it is accurate and complete.

A typical AR index for Magnuson-Stevens Act action falls into the following categories. Documents within each category should be arranged in chronological order.

1.          Administrative Record Index and Certification

2.          Fishery Management Plan and Amendments – this section of index includes the original FMP and its numerous amendments, plus related EISs and EAs if they are relevant to the case.

3.          Federal Register Notices and Regulations – this section contains all FR notices that are relevant to the action, except for meeting notices which appear in a later section; it also contains regulations applicable to the fishery, and the notices of proposed and final rulemaking for the challenged action, if there are implementing regulations.

4.          Agency Decision Documents – this section includes decision documents, including the final agency Decision Memorandum.

5.          Agency Outgoing Correspondence – this section includes communications from the agency to a variety of outside parties including the Council and its subgroups, fishery industry representatives, members of the public, "Distribution" and

14

"Interested Parties," and to the states for purposes of Coastal Zone Management Act review).

6.    Meeting Announcements – this section contains all Federal Register notices of meetings of the Council and its subgroups, as well as the Council's own meeting notices.

7.    Council Development Documents – this section of the index should include agendas, minutes, and other records related to the work of the Council.  This section of the AR should be arranged in chronological order, by Council meeting date.  For each meeting, the AR should include the proposed agenda and the minutes, and all records from the Council briefing book (and supplemental records that are distributed at the Council meeting) that relate to the particular issue being litigated.  In the record description in the index, the AR should include the Council document number (e.g., "Ad Hoc Committee Report C4a") in order to make sure the paper trail is complete when the documents are compared against the numbered items in the Council's meeting agenda (e.g., Council Meeting of June 18-19, 1996, Agenda Item C. Salmon Management, 4. Plan amendments, a. Report of Ad Hoc Committee).

8.    Council Newsletters - this section of the AR should contain, in chronological order, the newsletters that the Council distributes soon after each Council meeting.

9.    Cassette Tapes of Council Meetings -- these are noted in the index as "Available Upon Request," and they occasionally have to be produced for the AR.

10.    Council Comments – this section of index contains communications by the Council's Chairman and Executive Director to NOAA Fisheries and others concerning the issue that is being litigated.

11.    Comments from Other Government Agencies – this section contains comments received from other federal agencies (such as State, Interior, and EPA), and state and local governments.

12.    Public Comments – this section of the AR index should contain all written public comments received during the development of the action, and notes of meetings held between NOAA Fisheries and members of the public regarding the action.

13.    References (this section contains citations to relevant reference materials such as maps, technical guidance documents, technical reports, scholarly works, issue papers, and other relevant materials that don't fall into one of the other categories) should be identified in the AR index, but the agency may determine whether to include none, part or all of any reference document.  A note of caution about references: the agency's case cannot be built by simply including reference

15

materials that might support the agency's position after the fact.  Before reference documents are useful, they have to be at least mentioned (but preferably discussed, analyzed, and conclusions drawn from them) in the agency's decision documents.

As to any NOAA Fisheries' internal documents, those documents generated by agency personnel as comments on the action as it is being developed and finalized may be appropriate for including in the docket to satisfy federal record-keeping requirements, but should not be included in an AR.  Information in those documents should be included in decision documents presented to the decision-maker.

When a Magnuson-Stevens Act lawsuit is served on a federal agency, the agency generally has 45 days within which to file both its answer to the petition and its AR with court.  This is an extremely short deadline.  Using NOAA Fisheries' and the Council's existing filing systems (which are largely consistent with the document categories for ARs that are listed above), and using NOAA Fisheries' electronic file index, the agency should be able to meet deadlines.

**EXHIBIT 3**

**CASE NO. 1:07-CV-00142 RBW**

3 of 96 DOCUMENTS

**TROUT UNLIMITED, et al., Plaintiffs, and BUILDING INDUSTRY ASSOCIATION OF WASHINGTON, Intervenor-Plaintiffs, v. D. ROBERT LOHN, in his official capacity as Regional Administrator of NMFS Northwest Regional Office, and NATIONAL MARINE FISHERIES SERVICE, Defendants.**

**CASE NO. C05-1128C**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

*2006 U.S. Dist. LEXIS 28679*

**May 4, 2006, Decided**
**May 4, 2006, Filed**

**PRIOR HISTORY:** *Trout Unlimited v. Lohn, 2005 U.S. Dist. LEXIS 34367 (W.D. Wash., Nov. 30, 2005)*

**COUNSEL:** [*1] Trout Unlimited, National Wildlife Federation, Oregon Natural Resources Council Fund, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, Plaintiffs: Kristen L Boyles, EARTHJUSTICE LEGAL DEFENSE FUND SEATTLE, WA; Patti A Goldman, EARTHJUSTICE LEGAL, DEFENSE FUND (WA), SEATTLE, WA.

For Federation of Fly Fishers, Pacific Rivers Council, Plaintiffs: Kristen L Boyles, EARTHJUSTICE LEGAL DEFENSE FUND SEATTLE, WA.

For Building Industry Association of Washington, et al, Intervenor Plaintiff: Russell C Brooks, PACIFIC LEGAL FOUNDATION, BELLEVUE, WA.

For D Robert Lohn, in his official capacity as Regional Administrator of NMFS Northwest Regional Office, National Marine Fisheries Service, Defendants: Guillermo A Montero, US DEPT OF JUSTICE (ENRD), WASHINGTON, DC; Brian C Kipnis, US ATTORNEY'S OFFICE (SEA), SEATTLE, WA; Paul D Lall, US DEPARTMENT OF LABOR, WASHINGTON, DC, Ruth Ann Lowery, US DEP'T OF COMMERCE, SILVER SPRING, MD.

**JUDGES:** John C Coughenour, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** John C. Coughenour

**OPINION:**

ORDER

## I. INTRODUCTION

This matter has come before the Court on Plaintiffs' motion to compel completion of the administrative record [*2] (Dkt. No. 33). Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court hereby GRANTS the motion in part.

## II. BACKGROUND

Plaintiffs brought this action to challenge the National Marine Fisheries Service's ("NMFS") promulgation of its Policy on the Consideration of Hatchery-Origin Fish in Endangered Species Act Listing Determinations for Pacific Salmon and Steelhead ("Hatchery Listing Policy" and "HLP"), *70 Fed. Reg. 37,204 (June 28, 2005)* (to be codified at 50 C.F.R. pts. 223 & 224).

Defendants produced 613 documents totaling more than 8,000 pages, and including: (1) a 2002 preliminary draft of the proposed policy circulated for co-manager review and sixteen documents containing all comments thereto from state and local governments, the federal government, and private parties; (2) the Federal Register

notice of the June 2004 Proposed HLP and comments thereto; (3) the Federal Register notice of the final 2005 HLP; (4) four requested peer reviews; (5) about 200 comments received from the public; (6) about ten written comments received during public hearings; and (7) technical analysis, reports, and scientific [*3] literature considered by NMFS during the decision-making process. (Opp'n 3-4.) In addition, in response to Plaintiffs' motion, Defendants determined that an additional thirty-three documents were responsive, but withheld production of twenty-two of them as protected by the deliberative process privilege.

Plaintiffs now challenge Defendants' designation of the record as well as Defendants' assertion of the deliberative process privilege.

III. ANALYSIS

Under the Administrative Procedure Act ("APA"), a court reviewing an agency action must consider "the full administrative record before the [decisionmaker] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S.99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).* "The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. United States Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989)* (citation omitted). Thus, although generally it is the agency that compiles and designates [*4] the full administrative record, *see Fund for Animals v. Williams, 245 F. Supp. 2d 49, 56-57 (D.D.C. 2003)*, "[t]he whole administrative record . . . is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Id.* Thus, supplementation of the record produced may still result only in the production of the "whole administrative record," rather than in the production of extrinsic data that could put the Court in the impermissible position of proceeding *de novo* rather than with the proper deference to agency processes, expertise, and decision-making. *Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005).*

In the instant case, Plaintiffs challenge both Defendants' methodology for determining the contents of the administrative record in general and Defendants'

exclusion of three specific scientific reports.

*A. Designation of the record* In the present case, Defendants do not dispute that the administrative record in this case was compiled according to the guidelines set forth in NMFS POLICY DIRECTIVE 30-123, ADMINISTRATIVE RECORDS GUIDELINES (March 2005) ("AR DIRECTIVE"). In relevant [*5] part, the AR Directive states as follows:

> NOAA Fisheries keeps records for three separate purposes. First, the agency must maintain records to protect the public interest in government documents and materials. Second, the agency for its own business purposes, and occasionally for public viewing, keeps a docket of information relating to a specific decision. Third, when a NOAA Fisheries decision is challenged in court, the agency must produce a subset of these documents to the court.

> . . . .

> The term "administrative record" can be used to mean a compilation of documents that the agency maintains to track its decision-making process, or it can mean the subset of those documents that is compiled and produced to a court to demonstrate the decision-making process and the basis for a final agency decision. The Guidelines will use "administrative record" (AR) to refer to the record produced for litigation, and "docket" to describe the record maintained by the agency to document the development of a specific agency decision.

> . . . .

> [T]he agency should present an AR that demonstrates compliance with procedural requirements and the full rationale for the agency's [*6] decision.

> . . . .

> The AR must . . . explain and rationally

support the agency's decisions. . . . Particularly, the AR should document consideration of opposing points of view, and provide a thorough explanation as to why the preferred course of action was adopted.

. . . .

The following two threshold principles can be used in evaluating whether to exclude a document from an AR: (1) relevance; and (2) significance.

. . . .

A document is significant if it bears directly on the substantive issues examined by the agency while undertaking its decision-making process relating to the final action. If a document contains information and deliberations relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker), then the document is significant. Significant documents are a subset of relevant documents.

AR DIRECTIVE, *passim*. The directive further notes that a proposed AR should be reviewed by an NOAA case attorney, who will review the file to see if additional documents should be included or if irrelevant, insignificant documents should be removed. *ID.* at 9.

Defendants' concession that the AR DIRECTIVE [*7] guided the compilation of the administrative record in this case, and the above language, are sufficient to make the necessary prima facie showing that there is "material in the agency's possession indicative of . . . an incomplete record." *Amfac Resorts, LLC v. U.S. Dep't of Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).*

The language of the AR Directive, particularly with respect to its explanation of what types of documents are "significant" for the purposes of inclusion in an administrative record, is permissive and non-exclusive (*i.e.*, suggesting certain categories of documents that are "significant" rather than defining the boundaries). Plaintiffs' motion suggests that the language may have been interpreted as excluding documents that did not (1)

"bear directly on the substantive issues examined by the agency", or (2) contain information and deliberations relied on by the decision-maker. Defendants' response sheds no light on how Defendants interpreted and implemented the directive's explanation of "significance." If Defendants interpreted the directive as suggested by Plaintiffs (*i.e.*, omitting documents that did not "bear directly" on the substantive [*8] issues and/or that did not "contain information and deliberations relied on by the decision-maker"), the administrative record thus compiled could be legally deficient if it omits documents that are "significant", yet do not fit into the two specifically defined categories contained in the directive.

The term "significant" is not a term that has developed a special meaning in the context of development of an administrative record. Therefore, the agency's use of "significant" does not expressly run counter to any established determinations of what documents are "significant" in the context of producing an administrative record. However, the agency's explanation of "significant," coupled with its directive not to produce documents not deemed "significant" as defined by the guidelines, does run counter to the caselaw. An agency's action may be arbitrary and capricious if it can be shown that "the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).* [*9] Thus, documents that were *not* relied upon by a decisionmaker, or evidence relating to such documents and their non-consideration, have been held to be necessary elements of an administrative record. Furthermore, even within the universe of documents considered by the decision-maker, because the Ninth Circuit has held that a complete record includes all materials directly and indirectly considered by the decisionmaker, *Thompson, 885 F.2d at 555*, Defendants' limitation of "significant" documents to those "relied" on by a decisionmaker appears to be considerably narrower than permitted by this circuit.

For the foregoing reasons, the Court orders that Defendants re-assess the process by which the administrative record in this case was compiled and ensure that that process fully complies with the standards as developed through the applicable caselaw discussed

above. If, after this re-assessment, Defendants determine that the record complies with these requirements without regard to the AR DIRECTIVE, Defendants shall file an amended certification to that effect. Defendants shall also produce for Plaintiffs' inspection a copy of the applicable "docket" as created pursuant [*10] to the AR DIRECTIVE. If Defendants determine that the caselaw standard requires that the administrative record be supplemented, Defendants are directed to supplement the record as necessary.

### B. Specific scientific reports

Plaintiffs' motion challenged Defendants' omission of three scientific reports. Defendants have since conceded that two of the three reports are properly part of the record, but argue that the third, the Hey Report is not. The Hey Report "summarizes a scientists' workshop about current thoughts on using available data to identify 'conservation units' of Pacific salmon." (Fed. Defs.' Opp'n 4.) According to Defendants, "NMFS intends to use these ideas in considering whether to revise its methodology and data analysis used in identifying evolutionarily significant units (ESUs) of salmon, but NMFS did not intend for it to play any part in adopting the 2005 HLP." (*Id.*) Defendants also argue that because the Hey Report was submitted to the Northwest region of NMFS on May 16, 2005, one day before the regional office sent its draft of the final 2005 Hatchery Listing Policy to Washington, D.C., "[i]t stands to reason that the report . . . was not a basis of the [*11] decisionmaker's action." (*Id.* 5.)

With respect to Defendants' second argument, Plaintiffs point out that the Hey Report itself was the written product of scientific panel discussions and a public symposium that took place at the NMFS Northwest Regional office on March 29-31, 2005. Therefore, the opinions memorialized in the written report were actually made known to NMFS a full one-and-a-half months before the written report was submitted. This is ample time for the opinions contained in the report to have had an effect on Defendants' final Hatchery Listing Policy, or, in the alternative, for Defendants to decide that the opinions should not affect the final policy. Thus the fact that the written report itself was submitted to the regional office only one day prior to the office's submission of its version of the final Hatchery Listing Policy is immaterial and does not constitute a valid reason to exclude the report.

Defendants' first argument, that the Hey Report was

not "intended" to play any part in NMFS's adoption of the 2005 Hatchery Listing Policy (and that it was not a "basis" for the decisionmaker's action) is similarly inapposite. As the Court has noted above, if it [*12] can be shown that "the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise," *State Farm Mut. Ins. Co., 463 U.S. at 43*, the agency's action could be deemed arbitrary and capricious. If the Hey Report or the opinions contained therein appear that they should have been considered by NMFS and taken into account in the 2005 Hatchery Listing Policy, the fact that they *weren't* could cause the agency's adoption of the policy to be held to be arbitrary and capricious.

For these reasons, the Court finds that the Hey Report should be included in the administrative record.

### C. Deliberative process privilege

Defendants' supplemented administrative record included a log reflecting that twenty-two of the thirty-five documents that had been deemed properly part of the administrative record had been withheld as privileged. Plaintiffs do not challenge the single assertion of attorney-client privilege, but challenge Defendants' assertion of the deliberative [*13] process privilege with respect to the remaining twenty-one documents withheld.

"The deliberative process privilege shields from disclosure intra-governmental communications relating to matters of law or policy." *Greenpeace v. NMFS, 198 F.R.D. 540, 543 (W.D. Wash. 2000)* (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1116-17 (9th Cir. 1988)*). However, the privilege does not protect documents pertaining to determinations of science or fact. *Id. at 543-44*. The analysis developed by the Ninth Circuit in *National Wildlife Federation* inquires into the functional purpose of the document in question. Thus, simple assessments of whether a document contains "factual" rather than "deliberative" material are neither sufficient nor apposite. *Nat'l Wildlife Fed'n, 861 F.2d at 1119* (stating "the scope of the deliberative process privilege should not turn on whether we label the contents of a document 'factual' as opposed to 'deliberative'). Rather, a court must determine whether disclosure of the document would impermissibly "reveal the mental processes of decisionmakers." *Id.*

2006 U.S. Dist. LEXIS 28679, *13

The Court finds that the analysis necessary [*14] to determine whether Defendants properly asserted the deliberative process privilege requires that the Court conduct an *in camera* review of the twenty-one documents withheld from the administrative record. The *in camera* review will permit the Court to determine whether the documents are better characterized as contributing to a determination of fact or to a determination of law or policy and whether their disclosure will reveal NMFS's mental processes. Accordingly, the Court directs Defendants to produce the twenty-one documents withheld pursuant to the deliberative process privilege to the Court for *in camera* review. Defendants are to produce an unredacted version and a proposed redacted version of the documents. The portions proposed to be redacted should indicate "'precise and certain' reasons for preserving the confidentiality of the . . . information." *Greenpeace, 198 F.R.D. at 544.*

In addition, because the parties' briefing on this issue was relatively informal, the Court directs the parties to submit additional briefing regarding the applicability of the deliberative process privilege to this case. In addition, the parties are to discuss whether [*15] the definition of "distinct population segment" should be characterized as a scientific issue or a policy issue.

## IV. CONCLUSION

In accordance with the foregoing, Plaintiffs' motion to compel is GRANTED in part. Defendants shall add the Hey Report to the administrative record. With respect to documents other than the twenty-one withheld pursuant to the deliberative process privilege, the parties are directed to agree to a schedule by which Defendants shall either certify that the administrative record is complete under the caselaw or produce the necessary supplemental documents.

With respect to the deliberative process privilege issue, the parties are directed to agree to a mutually agreeable briefing schedule that will accommodate simultaneous cross-briefing of no more than seven pages each and simultaneous cross-replies of no more than five pages each.

The parties are to notify the Court within five judicial days of the date of this Order of their agreed-upon schedules.

Finally, Defendants are directed to produce for *in camera* review two versions of the documents withheld (as described above) within ten judicial days of the date of this Order.

SO ORDERED this 4th day [*16] of May, 2006.

John C Coughenour

UNITED STATES DISTRICT JUDGE

**EXHIBIT 4**

**CASE NO. 1:07-CV-00142 RBW**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

FEB 1 7 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| COASTAL CONSERVATION ASSOCIATION, ET AL., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-05-1214 |
| CARLOS GUTIERREZ, in his official capacity as Secretary of the United States Department of Commerce, ET AL., | § § § § | |
| Defendants. | § | |

Consolidated with

| | | |
|---|---|---|
| GULF RESTORATION NETWORK and THE OCEAN CONSERVANCY, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-05-2988 |
| CARLOS GUTIERREZ, in his official capacity as Secretary of the United States Department of Commerce, and the NATIONAL MARINE FISHERIES SERVICE, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Magistrate Judge upon referral from the District Judge is Plaintiffs' Motion to

Compel Completion of the Administrative Record (Document No. 56). In that motion, Plaintiffs seek

an Order compelling Defendants to complete the administrative record that has been filed in this case

by adding to the record "all materials generated through the development of Amendment 22, which

purports to establish the red snapper rebuilding plan and accompanying regulations", which

amendment and regulations form the basis of this case. Plaintiffs' Brief in Support of Motion to Compel Completion of the Administrative Record Document No. 56) at 2. According to Plaintiffs, the administrative record that has been filed in this case does not include records of staff communications and discussions, internal NMFS reviews and analyses, evaluations of competing proposals and their possible impacts, or disputes in the scientific literature. Plaintiffs argue that in order for the Court to determine in this case whether Defendants' promulgation of Amendment 22 and its accompanying regulations was arbitrary and capricious, an abuse of discretion, or contrary to law, a complete record of all materials and documents directly or indirectly considered by the agency decision makers must be provided to the Court.

In response to Plaintiffs' motion, Defendants first state that they have "filed with the Court an Administrative Record ("record") supporting the challenged agency actions." Defendants' Response (Document No. 60) at 3; *see also* Defendants' Response (Document No. 60) at ("Here, the 4,900 page administrative record includes all documents containing 'information and deliberations' relied upon by the agency decision-maker in making the decisions challenged by Plaintiffs in this case). Then, Defendants argue that because they have complied with their own internal "Guidelines" for compiling an administrative record, the administrative record they have filed is entitled to a presumption of regularity which shields it from the type of criticism advanced by Plaintiffs. Finally, Defendants argue that because the administrative record, as they have filed it, is "sufficient to allow the reviewing court to evaluate the challenged action and ascertain whether the agency considered relevant factors when taking that action" and because Defendants have not omitted "documents considered by the decision-maker when making his or her decision", *see* Defendants' Response (Document No. 60) at 15-16, the record currently before the Court is complete.

2

In this case, Plaintiffs are challenging "the substantive decisions made by Defendants pertaining to the approval of Reef Fish Fishery Management Plan ("Reef Fish FMP"), Final Amendment 22, May 2004 ("Amendment 22") and the adoption of Amendment 22 without mandating bycatch reduction standards and regulations in the Shrimp Fishery in order to prevent overfishing of red snapper within the Reef Fish Fishery." Plaintiff Coastal Conservation Association's Second Amended Complaint (Document No. 50) at 2. Plaintiffs allege that Amendment 22 fails to comply with National Standards 1, 2, 9, and § 303(a)(1) of the Magnuson-Stevens Act by "failing to address shrimp trawl bycatch", and by "failing to prevent overfishing of red snapper and failing to achieve optimum yield on a continuing basis". *Id.* at 19-22. In addition, Plaintiffs allege that the decision to adopt Amendment 22 "without addressing shrimp industry bycatch", and "without addressing the best available scientific data indicating that overfishing is derived almost exclusively from shrimp trawl bycatch" is "arbitrary, capricious, contrary to law and is an abuse of agency discretion in violation of the APA [Administrative Procedures Act], 5 U.S.C. § 706(2)." *Id.*

Under the Administrative Procedures Act, a District Court is empowered to "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A). In making such a determination, "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. At issue with respect to Plaintiffs' motion is what constitutes the "whole record" for purposes of review under § 706.

An administrative record is considered "whole" or "complete" when it contains documents and materials directly or indirectly considered by agency decision-makers, including evidence that is contrary to the decision-maker's decision. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th

3

Cir. 1993); *Thompson v. United States Department of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *International Longshoremen's Association v. National Mediation Board*, ___ F. Supp.2d ___, 2006 WL 197461 (D. D.C. 2006); *Miami Nations of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996); *Warren Land Exchange Project v. Dombeck*, 47 F. Supp.2d 1196, 1205 (D. Ore. 1999); *Arizona Rehabilitation Hospital, Inc. v. Shalala*, 185 F.R.D. 263, 266 (D. Ariz. 1998); *see also Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision."). Whether a document has "literally pass[ed] before the eyes of the final agency decision maker" is not determinative. *Clairton Sportsmen's Club v. Pennsylvania Turnpike Commission*, 882 F.Supp. 455, 464 (W.D. Pa. 1995). While an administrative record compiled and submitted by an agency is presumed to be complete, that presumption can be rebutted. *Miami Nation of Indians*, 797 F.Supp. at 776.

Here, at least with respect to the absence of documents and materials evidencing a dispute in the scientific literature, or as Plaintiffs characterize it – documents and materials evidencing "a robust debate among scientists, NMFS staff and Council members and staff during the red snapper stock assessment process", Plaintiffs have rebutted the presumption that the administrative record submitted by Defendants in this case is complete. While it cannot be determined, upon this record, exactly what may be missing from the administrative record that has been submitted, it cannot be said that the Court currently has before it all the information that the Defendants did when the decisions made the basis of this suit were made. *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's actions fairly, it should have before it neither more nor less information that did the agency when it made its decision."). As such, it is

4

ORDERED that Plaintiffs' Motion to Compel Completion of the Administrative Record (Document No. 56) is GRANTED. Within thirty days after the entry of this Order, Defendants shall "complete" the administrative record, by providing to the Court all non-privileged documents and materials directly or indirectly considered by Defendants in making the decisions made the basis of this case, including evidence and material that may be contrary to such decisions. This should include non-privileged communications (including emails) among and between NMFS staff, the staff of the Council and other parties relating to the development of Amendment 22, and all non-privileged records related to the EIS process concerning (a) the possible impacts of the proposed rule, (b) assessments of alternatives, (c) the impact of scientific uncertainties on the selection of alternatives, and (d) the alternatives related to how much to reduce bycatch in the shrimp fishery (as opposed to lowering the TAC in the directed fishery). Defendants shall also have thirty days after the entry of this Order to compile a privilege log covering the documents and materials that have been withheld on the basis of privilege. Such log shall be served upon Plaintiffs, who then may challenge any such privilege assertions.

Signed at Houston, Texas, this 17th day of February, 2006.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE